**UNITED STATES v. ANZALONE.**

Crim. A. No. 13150.

United States District Court
W. D. Pennsylvania.

Oct. 25, 1951.

Edward C. Boyle, U. S. Atty., Pittsburgh, Pa., for the Government.

Premo J. Columbus, Pittsburgh, Pa., for the defendant.

MARSH, District Judge.

In this case the indictment charges that on or about November 2, 1948, the defendant, Domenick Anzalone, falsely and willfully represented himself to be a citizen of the United States; Section 911, Title 18 U.S.C.

Upon motion of the defendant the case was transferred from Pittsburgh to Erie for trial on March 27, 1951. At the trial it was earnestly contended by the defendant that the court should have directed a verdict of not guilty. This the court refused to do and the jury found the defendant guilty. He then presented (1) a motion for judgment of acquittal after verdict; (2) a motion in arrest of judgment; and (3) a motion for a new trial. These motions were duly argued and both sides filed briefs in September. We have painstakingly analyzed the masterful and voluminous brief filed by counsel for defendant; each of the interesting questions presented has been given attention. Despite counsel's persuasiveness and his thorough documentation of authorities, it is the judgment of the court that the decision to submit the case to the jury was right, and that the evidence was sufficient to justify the verdict. Consequently, the motions will be denied.

The defendant has based his motions substantially on the following:

1. That the statute under which defendant was convicted is repugnant to the First, Fifth, Sixth and Tenth Amendments to the Constitution of the United States and, therefore, is unconstitutional.

2. That signing a Pennsylvania voter's certificate in 1948 is not a representation of American citizenship.

3. That the evidence is insufficient to prove the corpus delicti and sustain the conviction.

### Constitutionality

■ Defendant attacks the constitutionality of the statute as violative of the Tenth Amendment in that it is not "necessary and proper" to the carrying out of the regulation of naturalization delegated to Congress under Article 1, Section 8, clause 4 of the Constitution. He concludes, therefore, that it is solely a police power regulation reserved to the states by the Tenth Amendment. There is abundant authority sustaining the constitutionality of the statute [1] and despite the vigorous effort to convince us otherwise, we believe that the cases holding the statute constitutional correctly interpret the law. In fact, we doubt the validity of defendant's contention that it is a measure which only a state has power to establish under its general police powers.[2] A false claim that one is a citizen of the United States does not constitute an offense against the state. United States citizenship is an incident of national sovereignty and to Congress is delegated the exclusive power to establish uniform rules of naturalization. An alien who claims to be a citizen of this country without following the rules set forth by Congress has committed an offense against the national sovereign. It is within the "necessary and proper" powers of Congress to determine that an alien cannot, with impunity, falsely claim to be a citizen when in fact he is not. It appears to the court to be a necessary adjunct to the establishment and enforcement of uniform rules of naturalization.[3]

■ The contention that the statute violates the First, Fifth and Sixth Amendments is likewise without merit. Numerous courts have sustained the validity of the statute as not violative of these Amendments [4] and we agree with their interpretation of the law.

### The Criminal Act

The Government proved that in the General Election held November 2, 1948, in the Borough of North Belle Vernon, Westmoreland County, the defendant signed a voter's certificate, prescribed by Pennsylvania law.[5] This certificate contained the statement, "I hereby certify that I am qualified to vote at this General Election."

■ The Government contends that this act on the part of the defendant was willful and constitutes a representation of United States citizenship, which representation is false because, as it also asserts, Anzalone is a citizen of Italy.[6] Defendant strenuous-

---

1. United States v. Franklin, 7 Cir., 1951, 188 F.2d 182; United States v. Tandaric, 7 Cir., 1945, 152 F.2d 3; United States v. Achtner, 2 Cir., 1944, 144 F.2d 49, 52; United States v. Martinez, D.C.M.D.Pa. 1947, 73 F.Supp. 403, 407; United States v. Frederick, D.C.S.D.Tex.1943, 50 F.Supp. 769, 772.

2. See Hines v. Davidowitz, 1941, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581, in which the Supreme Court held that the Pennsylvania Alien Registration Act, 35 P.S. § 1801 et seq., encroached upon legislative powers constitutionally vested in the federal government.

3. See Hines v. Davidowitz, supra, 312 U.S. at page 66, 61 S.Ct. at page 403, where the Supreme Court held: "And specialized regulation of the conduct of an alien before naturalization is a matter which Congress must consider in discharging its constitutional duty 'To establish an uniform Rule of Naturalization.'"

4. See cases cited at footnote 1, supra.

5. Act 1937, June 3, P.L.1333, art. XII, § 1203, 25 P.S. § 3043.
 See also The Permanent Registration Act for Boroughs, Towns and Townships, 1937, April 29, P.L. 487, § 36(f), 25 P.S. § 951–36(f).

6. Defendant urges that the false representation of citizenship, if any, was made in 1940 when he registered to vote, stated that he was born in Hammonlton, Louisiana, and took an oath that he was a citizen of the United States. Of course, the Statute of Limitations is a bar to the prosecution for the 1940 offense. But the registration card was introduced by the Government as evidence that the defendant knew he was required to be a citizen of the United States in order to vote. It is also evidence that the representation in 1948 was intentional and not accidental. Evidence of a prior offense, though bar-

ly argues that the signed certificate is not sufficient to constitute a representation of United States citizenship.

Obviously, the voter's certificate does not state in so many words that a signer is a citizen of the United States. Is, then, a crime committed by an alien who willfully executes such a certificate, or does the statute require the accused to make a statement using the words "I am a citizen of the United States" or reply affirmatively to an interrogation using those words?

It is the opinion of the court that the statement on the voter's certificate primarily means that the declarant is a citizen of the United States, and since it does not admit of any other interpretation as to citizenship, it is within the purview of the statute. Any normal adult who makes such a representation to an election board on election day knows, or will be held to know, the full import of that statement. We are supported in this view by the recent case of United States v. Franklin, supra, 7 Cir., 1951, 188 F.2d 182, 187, where it appears that the provisions of the Illinois election laws are similar to those of Pennsylvania. The first qualification required by the Constitution of Pennsylvania [7] is that an elector shall be a citizen of the United States at least one month. The registration laws of Pennsylvania [8] provide that every person claiming the right to be registered as an elector shall, inter alia, disclose the state of the United States, or foreign country, where he was born, and shall take an oath that he is a citizen of the United States. The Election Code requires at each election "each elector who desires to vote shall first sign a voter's certificate" [9] which certificate shall certify "that I am qualified to vote" [10] and hand same to the election officer. "It is only when the signature to the voter's certificate is compared with the signature on the registration affidavit and found by the election officials to have been made by one and the same person that the applicant is permitted to vote. See Section 36, 25 P.S. § 951–36 (a)(f)." United States v. Martinez, D.C.M.D.Pa.1947, 73 F.Supp. 403, 405.

The Franklin and Martinez cases are authority for the proposition that by virtue of the Constitution, election laws, and the registration affidavit, ample notice is given to an alien that United States citizenship is a primary and essential qualification of a voter and when he executes the voter's certificate he knowingly and deliberately falsifies that fact. It is the specific provisions of the election laws in requiring the execution of a voter's certificate which distinguishes the instant case from Fotie v. United States, 8 Cir., 1943, 137 F.2d 831 and brings it within the rule laid down in United States v. Franklin and United States v. Martinez, supra.

The cases cited by the defendant preclude conviction where an accused states he was born in "Chicago, Illinois," United States v. Weber, 7 Cir., 1950, 185 F.2d 479; or where an alien states that "he was born in New York and that he had lived in the United States for life," Smiley v. United States, 9 Cir., 1950, 181 F.2d 505, 506; or where the same defendant answered affirmatively the question "Are you a citizen?"; and the reasons advanced in these decisions are that such representations do not necessarily mean that the declarant represents that he is a citizen of the United States. With these cases we fully agree but do not believe they are controlling in this case where the representation of American citizenship is inherent in the act of executing a voter's certificate.

### Sufficiency of the Evidence

The contention of the defendant in this regard is that the Government

---

red by the Statute of Limitations, may be used to prove intent, motive, state of mind, etc., of the crime charged. United States v. Cohen, D.C.W.D.Pa.1947, 73 F. Supp. 96, 99; United States v. Thompson, D.C.M.D.Pa.1939, 27 F.Supp. 905, 906; United States v. Roudenbush, C.C.E.D. Pa.1832, Fed.Cas.No.16,198, Baldw. 514.

7. Article VIII, Section 1.

8. Title 25 P.S. §§ 951–17, 18, 19, 2(k).

9. The Election Code, Title 25 P.S. § 3050 (a). See also 25 P.S. § 951–36(a) et seq.

10. The Election Code, Title 25 P.S. § 3043. See also 25 P.S. § 951–36(f).

failed to establish two essential elements of the corpus delicti, (1) that he was born in Italy, and (2) that he has not been naturalized.[11]

As proof of the first element, Samuel H. Mitchell testified he met the defendant in May, 1934, at Uniontown, and asked him where he was born. Defendant replied that he was born in Palermo, Italy. At the time, Mr. Mitchell was serving as assistant chief county detective of Fayette County. William J. Myers, corroborated by John C. Beck, both agents for the Federal Bureau of Investigation, stated that in August, 1949, defendant admitted to them that he had told people in 1928, in 1931, and in 1934 that he had been born in Italy. Defendant admitted on the witness stand that he had made these admissions.

Cases are cited which hold that in a criminal action the Government cannot establish the foreign birth of an accused person by his admissions alone. These cases state that foreign birth is an element of the corpus delicti and, therefore, independent proof is required. Gulotta v. United States, 8 Cir., 1940, 113 F.2d 683; Duncan v. United States, 9 Cir., 1933, 68 F.2d 136; Fotie v. United States, 8 Cir., 1943, 137 F.2d 831.

 However, those cases do not rule this case. In Warszower v. United States, 1941, 312 U.S. 342, 61 S.Ct. 603, 606, 85 L.Ed. 876, it was held that "The rule requiring corroboration of confessions protects the administration of the criminal law against errors in convictions based upon untrue confessions alone. Where the inconsistent statement was made *prior to the crime* this danger does not exist. Therefore, we are of the view that such admissions do not need to be corroborated. They contain none of the inherent weaknesses of confessions or admissions *after the fact."* (Emphasis added). The Court then distinguished the Gulotta and Duncan cases on the basis that they did not consider this difference.[12] All of Anzalone's admissions were made prior to the crimes committed in 1948 and 1940.

But notwithstanding, the Government did introduce evidence tending to corroborate defendant's admissions. His sister testified that she was born in Palermo, Italy; that defendant was three years younger than she; that they were young together in Italy,[13] and that defendant was married "on the other side."[14] It is clear that the extrajudicial admissions thus corroborated may be used to establish the corpus delicti: Wharton's Criminal Law, 12th ed., § 361, page 471. In our opinion the evidence of the corpus delicti was sufficient to justify submission of the issue of defendant's birthplace to the jury.

Moreover, we think the jury had sufficient evidence to find that this element of the corpus delicti was proved beyond a reasonable doubt. Defendant testified that his other sister, Maria, is about three years younger than he and that she, too, was born in Italy.[15] This fact may be added to the circumstances and admissions proved by the Government.

In addition, the Federal Bureau of Investigation agent testified that in a 1949

11. A copy of defendant's Italian birth certificate would have been the best evidence to prove the first point. An alleged copy of an Italian birth certificate offered by the prosecution was rejected because it clearly was not a copy of a birth certificate at all. At best it was an attempt to introduce hearsay evidence. Title 28 U. S.C. § 1741.

12. In Fotie v. United States, supra, 137 F. 2d at page 838, the Court held that the Warszower case was not controlling because Fotie's admissions also contained explanations and qualifications which *accompanied the admissions when they were made.* That is not true of the admissions in the instant case.

13. See 31 C.J.S., Evidence, § 170.

14. In Daeche v. United States, 2 Cir., 1918, 250 F. 566, 571, Judge Learned Hand said: " * * * any corroborating circumstances will serve which in the judge's opinion go to fortify the truth of the confession. Independently they need not establish the truth of the corpus delicti at all, neither beyond a reasonable doubt nor by a preponderance of proof."

15. See footnote 19, infra.

interview Anzalone admitted that the towns of Hammonlton and Hannington, Louisiana, both recorded [16] by Anzalone in 1940 as the towns of his native birth, were fictitious. The Government also attempted to show that the birth records obtained by defendant from Louisiana in 1942, showing that defendant was born in Paulina or Remy, Louisiana, were a fantastic fabrication. This the jury believed and rejected defendant's explanations and contentions.

To support the contention that the evidence was insufficient to prove the second element of the corpus delicti, viz., that he was not naturalized, defendant cites Colt v. United States, 5 Cir., 1946, 158 F.2d 641.[17] In that case the court stated: "Since there is no direct evidence that Colt had not been naturalized, and the proven circumstances do not reasonably exclude but are consistent with naturalization, we are of opinion that it cannot be said Colt's guilt is shown beyond a reasonable doubt."

In the instant case the Government proved that there was no record of defendant's naturalization in the Immigration and Naturalization Office in Pittsburgh.[18] Since these records include Cambria and Westmoreland Counties, where Anzalone has resided for over twenty-three of the twenty-nine years he has been in this country, they constitute some direct evidence that he was not naturalized. Also, the proven circumstances reasonably exclude the fact of naturalization; i. e., it was shown that defendant claimed, albeit falsely, United States citizenship by birth since 1940. Accordingly, we considered at the trial that there was sufficient prima facie proof to take the issue of naturalization to the jury. This issue was resolved against defendant beyond all reasonable doubt when he took the stand and claimed citizenship by birth.[19]

An order will be entered in conformity with this opinion, refusing defendant's motions.

16. Hammoneton was recorded on the registration card and Hannington was admittedly stated when defendant registered in 1940 for the draft.

17. But see Campa v. United States, 5 Cir., 1946, 158 F.2d 643.

18. A certificate of the Custodian of Records of the Central Office of Immigration and Naturalization Service which covers the entire country would have been more conclusive.

19. In determining whether the evidence was sufficient to prove the corpus delicti beyond a reasonable doubt, including the elements that accused was born in Italy and that he was not naturalized, it is permissible for the court to consider all of the evidence including that produced by the accused. Proof of the corpus delicti "may be supplied by accused, testifying in his own behalf"; 23 C.J.S., Criminal Law, § 916(b), page 185; § 918, page 187.